```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
UNITED STATES OF AMERICA                              :
                                                      :
             v.                                       :       14 Cr. 86 (KPF)
                                                      :
MARCO ALMONTE,                                        :       OPINION AND ORDER
                                                      :
                          Defendant.                  :
                                                      :
------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  July 24, 2014
```

KATHERINE POLK FAILLA, District Judge:

In an oral opinion issued on May 23, 2014, the Court denied several pretrial motions raised by Defendant Marco Almonte, including in particular a motion to suppress physical evidence based on alleged violations of the Fourth Amendment. (Dkt. #36).[1] Almonte has moved for reconsideration of that decision pursuant to Rule 6.3 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York. For the reasons set forth below, the motion is denied.

## APPLICABLE LAW

Although the federal and local rules of criminal procedure do not specifically provide for motions for reconsideration, courts in this District have applied Local Rule 6.3 in criminal cases. *See, e.g.*, *United States* v. *Gomez*, No. 05 Cr. 495 (JGK), 2012 WL 1901196 (S.D.N.Y. May 25, 2012). Under Local

---

[1] Familiarity with the facts detailed, and conclusions reached, in the Court's May 23, 2014 Opinion and Order (the "May 23 Opinion") is assumed. For convenience, the parties' briefing will be referred to using the convention "[Party] [Motion] [Type of Brief]." Transcripts of proceedings occurring before the Court on a particular date will be referred to using the convention "[Date] Tr."

Rule 6.3, the moving party must "point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader* v. *CSX Transp. Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1995) (internal citations omitted) (observing that the standard for granting motions for reconsideration is "strict").

"Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Parrish* v. *Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd.* v. *Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citation and quotation marks omitted).

The Second Circuit has made clear that a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories ... or otherwise taking a second bite at the apple." *Analytical Surveys, Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). Such a motion likewise should not be made "reflexively to reargue 'those issues already considered when a party does not like the way the original motion was resolved.'" *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387 (S.D.N.Y. 2011) (quoting *Makas* v. *Orlando*, No. 06 Civ. 14305 (DAB) (AJP), 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008) (internal quotation marks omitted)).

## DISCUSSION

### A. Almonte Has Not Identified a Basis for Reconsideration of the Court's May 23 Opinion

In broad summary, the Court concluded in the May 23 Opinion that (i) the initial encounter among Almonte, Officer Hines, and Officer Cadavid in Claremont Park on December 5, 2013, was consensual; (ii) the officers also had reasonable suspicion to stop Almonte pursuant to *Terry* v. *Ohio*, 392 U.S. 1 (1968), based on Almonte's presence in the park after it had closed; (iii) Almonte's flight from the officers after speaking briefly with them provided additional reasonable suspicion for a *Terry* stop; and (iv) in any event, Almonte abandoned the gun (and thereby forfeited any reasonable expectation of privacy in it) by removing and discarding the jacket in which it was kept while fleeing from the officers.  (*See* May 23 Tr. 6-17).  Almonte's current motion comprises two arguments: one in favor of reconsideration, and one in favor of reopening the May 6 suppression hearing.  The Court will address the first of Almonte's arguments in this section.

Almonte contends that reconsideration is warranted because the Court "misinterpreted controlling law and factual matters that influenced its earlier decision." (Def. Recon. Br. 2).  In this regard, Almonte argues first that discrepancies in the testimony of the two officers "must be taken into account by the Court in reconsidering its decision." (*Id.* at 4).  From here, Almonte proceeds to challenge the Court's findings regarding the voluntariness of his initial encounter with the officers (*id.* at 4-6), the officers' reasonable suspicion

3

to stop him on December 5 (*id.* at 6-12), and the forfeiture of any reasonable expectation of privacy in the gun (*id.* at 9-10).

      As a preliminary matter, these arguments are not properly raised in a reconsideration motion.  Almonte has identified no existing precedent that the Court has overlooked, nor any intervening precedent that would call into question its prior decision.[2]  Moreover, Almonte made these precise arguments in his moving papers and in the oral argument that followed the May 6 suppression hearing.  (*See, e.g.*, Def. Supp. Br. 5-9, 12 (challenging the officers' reasonable suspicion to stop him); *id.* at 11-12 (challenging the officers' written statements concerning their observation of the gun); *id.* at 12-18 ("Applying these legal principles to the facts of this case it is clear that the initial encounter of Mr. Almonte crossed the line from a permissible *Terry* investigative detention to a full blown arrest without probable cause when the defendant was handcuffed without any articulable reason."), Def. Supp. Reply 2-3 (challenging reasonable suspicion for Almonte's stop, citing issues with park signage); May 6 Tr. 164-65 (arguing no reasonable basis for the stop); *id.* at 166-67 (arguing not a consensual encounter); *id.* at 167-70 (offering bases to challenge the credibility of the officers); *id.* at 170-71 (challenging stop predicated on alleged trespass into Claremont Park)).  The law

---

[2]    Almonte cites *United States* v. *Breedlove*, 424 F. Supp. 2d 379 (D. Conn. 2006), as "[c]ontrolling authority in this Circuit" for the proposition that "without the posting of signs regarding closing times at all entrances … a reasonable conclusion cannot be reached that the defendant was on notice that the park closed at a particular time." (Def. Recon. Br. 8).  As the Government correctly notes (*see* Gov't Recon. Opp. 4 n.2), *Breedlove* is neither precedential nor factually apposite.

is clear that Almonte may not use the procedural vehicle of a reconsideration motion to reargue points he made clearly in his written and oral suppression submissions.

Even were it proper for the Court to consider these arguments anew (and it is not), the Court's decision would not change. For starters, the Court made clear in its Opinion that, to the extent the defense had identified any inconsistencies in the officers' testimony, such inconsistencies "were not relevant to [the Court's] resolution of the legal issues." (May 23 Tr. 4; *see also id.* at 5-6). Perhaps more importantly, the Court remains convinced that its May 23 Opinion accurately applies the relevant case law to the factual findings it made, and, accordingly, sees no basis to alter the legal conclusions it reached about the propriety of the encounter and the absence of a reasonable expectation of privacy in the gun.

### B.     Almonte Has Not Identified a Basis to Reopen the Hearing

Relatedly, Almonte requests that the suppression hearing be opened in light of "radio run" and "sprint run" reports that the Government produced to him after the suppression hearing. (Def. Recon. Br. 13-15). Specifically, Almonte contends that the reports reflected a police request for medical assistance for Almonte on the night of his arrest; that such information undercuts Officer Hines's testimony disclaiming knowledge of whether Almonte was injured that night; and that Almonte should be permitted to cross-examine both officers concerning the genesis of the reports to determine whether any resulting information calls into question either officer's credibility.

5

A court has discretion to reopen a suppression hearing based on new evidence. *See generally United States* v. *Bayless*, 201 F.3d 116, 131 (2d Cir. 2000); *United States* v. *Leaver*, 358 F. Supp. 2d 273, 279 & n.30 (S.D.N.Y. 2005) ("[I]t has long been the law in this Circuit that, in order to reopen a suppression hearing on the basis of new evidence, the moving party, whether it is the government or the defendant, must show that the evidence 'was unknown to the party, and could not through due diligence reasonably have been discovered by the party, at the time of the original hearing.'" (internal citation omitted)). Moreover, the standard for reopening a suppression hearing based on new evidence is as stringent as the standard for reconsideration. *See United States* v. *Oliver*, 626 F.2d 254, 260 (2d Cir. 1980) (upholding refusal to reopen a suppression hearing where, among other things, defendant failed to offer any additional material facts). Thus, when the proffered new evidence is impeachment evidence that "do[es] not bear on the core findings of the suppression hearing," a court does not abuse its discretion in declining to reopen the hearing. *United States* v. *Oquendo,* 192 F. App'x 77, 80 (2d Cir. 2006) (summary order).

Almonte does not suggest that the two reports speak to the core issues implicated by his suppression motion, and indeed they do not. The reports reflect events occurring after he was arrested, and thus necessarily do not address his initial encounter with law enforcement or the circumstances leading up to his arrest and the recovery of the firearm. Instead, Almonte argues that the reports are useful as potential impeachment material: Had it

6

been determined that Officer Hines had been involved in the communications that resulted in the reports, Almonte could have argued that the officer's failure at the suppression hearing to recall Almonte's injuries bespoke a lack of candor. (Def. Recon. Br. 14-15).

Almonte's argument is too tenuous to merit reopening of the suppression hearing. Even today, Almonte can point to no evidence that Officer Hines was actually involved with the generation of either report. (*See* Def. Recon. Br. 14). Accordingly, Almonte has identified no basis for impeaching that officer's testimony that he could not recall whether Almonte was injured on December 5. (*See* May 6 Tr. 66).[3] And while Almonte argues cursorily that he should also have been able to cross-examine Officer Cadavid with the aid of the reports, he has identified no testimony of hers that would be contradicted by those reports. (*See* May 6 Tr. 114-15 (Cadavid testimony that Almonte's hand was scraped during the encounter)).

---

[3] Almonte fails to appreciate that Officer Hines did not disclaim the possibility of injury, but only his memory of that fact. If anything, the reports would be more likely to refresh his recollection than impugn his testimony about what is, for purposes of the Court's suppression analysis, a most tangential matter. Moreover, as the Government points out, Officer Hines may have understood the question to refer only to the time period immediately following his tackling and handcuffing of Almonte. (Gov't Recon. Opp. 6).

## CONCLUSION

For the foregoing reasons, Defendant's motion for reconsideration is DENIED. The Clerk of Court is directed to terminate Docket Entry 38. Trial in this matter is scheduled for September 15, 2014, at 9:00 a.m.

SO ORDERED.

Dated: July 24, 2014
     New York, New York

                                          KATHERINE POLK FAILLA
                                          United States District Judge